**GARITA HOTEL LIMITED PARTNER-SHIP d/b/a Garita Hotel Corporation, Plaintiff, Appellant,**

v.

**PONCE FEDERAL BANK, Defendant, Appellee.**

No. 97–1293.

United States Court of Appeals, First Circuit.

Heard July 28, 1997.

Decided Sept. 5, 1997.

Eric A. Tulla, Hato Rey, PR, with whom Rivera Tulla & Ferrer, was on brief, for appellant.

J. Anthony Downs, Boston, MA, with whom A. Lauren Carpenter, Goodwin, Procter & Hoar, Harold D. Vicente and Vicente & Cuebas, were on brief, for appellee.

Before BOUDIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and POLLAK,** Senior District Judge.

PER CURIAM.

In the district court, Garita Hotel claimed that Ponce Federal Bank had unconditionally contracted to lend Garita $6 million for the expansion, renovation and operation of a hotel complex in Carolina, Puerto Rico, and that the bank breached that contract when it refused to advance funds unless Garita obtained a casino license. The district court, acting after a remand from this court, *Garita Hotel L.P. v. Ponce Fed. Bank*, 958 F.2d 15 (1st Cir.1992), granted summary judgment to Ponce Federal. Garita's appeal to this court followed.

■ We review the district court's grant of summary judgment *de novo*, drawing reasonable inferences in Garita's favor. *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559, 562 (1st Cir.1996). On the record before the district court, most of the undisputed facts strongly suggested that approval of the casino license had been an understood condition of the loan. Garita's main argument to the contrary rests on an alleged oral statement to Garita representatives, by a Ponce Federal agent in September 1986, that the bank had "approved" the loan. Internal bank documents arguably corroborate the making of this statement.

■ Under Puerto Rico law, a commercial contract must be corroborated, and this requirement extends not just to the existence of an agreement but also to its essential terms. *Vila & Hnos, Inc. v. Owens Ill. de Puerto Rico*, 17 P.R. Offic. Trans. 987, 997–1000 (1986). The district court invoked this requirement, holding that there was certainly no corroboration for the claim that the bank had agreed to make the loan unconditionally and without regard to the approval of the casino license. On appeal, Garita argues that the loan agreement should not have been classified as a commercial contract.

A Puerto Rican statutory provision defines a loan as commercial if (1) at least one party

is a "merchant" and (2) the loan proceeds "are destined to commercial transactions." 10 L.P.R.A. § 1651; *see id.* § 1001 (defining merchant). Here, where an established bank proposed to extend a sizable loan to an experienced hotel and casino management company for the purpose of renovating and operating a luxury hotel-casino complex, we agree with the district court that whatever contract the parties may have formed is commercial in nature under Puerto Rican law. *See FDIC v. Consolidated Mortgage & Fin. Corp.*, 805 F.2d 14, 18 (1st Cir.1986).

Garita contends that the loan was not commercial because it was extended for a purpose (hotel renovation) that differed from Garita's traditional business (hotel management). It is true that courts have found noncommercial transactions where borrowed funds were used for personal purposes, *see, e.g., FDIC v. Martinez Almodovar*, 671 F.Supp. 851, 868–70 (D.P.R.1987); or where the loan was apparently made for largely personal reasons, *see, e.g., Barceló & Co. v. Olmo Reyes*, 48 P.R.R. 239, 241–42 (1935). But any loan agreement between Garita and Ponce Federal was for the clearly commercial purpose of real estate development. *See Consolidated Mortgage*, 805 F.2d at 18.

Garita also relies on *FDIC v. Francisco Investment Corp.*, 638 F.Supp. 1216 (D.P.R. 1986), *rev'd on other grounds*, 873 F.2d 474 (1st Cir.1989). There, the district court held that a loan to a corporation controlled by doctors, who borrowed the money to buy all the shares of an incorporated nursing home, intending to operate it as a hospital or other medical facility, was not commercial. This court had no occasion to resolve the issue. *Francisco*, 873 F.2d at 476.

*Francisco* rested heavily on the notion that medical practice was inherently not a "commercial" endeavor within the specialized meaning of section 1651, *Francisco*, 638 F.Supp. at 1218–19, a notion that has little application to a hotel and casino company proposing a new hotel and casino venture. There is some language in *Francisco* arguably more helpful to Garita, but that lan-

---

* Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

** Of the Eastern District of Pennsylvania, sitting by designation.

guage may itself be in some tension with Puerto Rico case law indicating that a loan may be "commercial" even though the planned use of funds differs from the borrower's historical business. *See, e.g., Vila & Hnos,* 17 P.R. Offic. Trans. at 990, 995–96 (corporation engaged in transportation of sand and stone sought financing to purchase property capable of supplying these materials).

■ Thus, we agree with the district court that the loan agreement in this case was a commercial contract for which corroborating evidence was required as to the existence of the agreement and its essential terms. Nothing in the record corroborates Garita's contention that Ponce Federal agreed to a loan regardless of government approval of the planned casino. Summary judgment was properly granted.

*Affirmed.*