Elizabeth A. MCLAUGHLIN, Plaintiff

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Athena Neurosciences Inc. Long Term Disability Plan, Defendants

No. 02–67–P–S.

United States District Court, D. Maine.

Oct. 8, 2002.

injury are not alleged to have taken place over the Internet.

Charles W. March, Esq., Reben, Benjamin, & March, Portland, ME, Daniel Feinberg, Esq., Teresa S. Renaker, Esq., Lewis & Feinberg, PC, Oakland, CA, for Elizabeth A McLaughlin, plaintiff.

Geraldine G. Sanchez, Esq., Pierce, Atwood, Portland, ME, Mark A. Casciari, Esq., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Melinda J. Caterine, Esq., Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, Daniel B. Klein, Esq., Seyfarth Shaw, Boston, MA, for UNUM Life Insurance Company of America, Athena Neurosciences Inc Long Term Disability Plan, defendants.

## ORDER GRANTING THE MOTION TO DISMISS

SINGAL, District Judge.

Plaintiff has brought an action against her employee welfare benefit plan and her long term disability insurer to: 1) recover benefits due to her under the plan, 2) enforce her rights under the plan, and 3) clarify her right to future benefits under the plan. Presently before the Court is Defendant UNUM Life Insurance Company of America's ("UNUM") Motion to Dismiss (Docket # 4). For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss.

### I. STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), the court takes the well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Gorski v. N.H. Dep't of Corr.*, 290

F.3d 466, 473 (1st Cir.2002). A defendant is entitled to dismissal only if it appears to a certainty that the plaintiff would be unable to recover under any set of facts. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). Nonetheless, granting a motion to dismiss based on a limitations defense is appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred. *La-Chapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998).

Ordinarily, a court may not consider any documents beyond the complaint, or not expressly incorporated therein when addressing a motion to dismiss, unless the motion is converted into one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). Courts may, however, consider outside material when the complaint relies upon documents whose authenticity is not challenged. *Id.* Such documents "merge[ ] into the pleadings" and the court may properly consider them under a Rule 12(b)(6) motion to dismiss. *Beddall v. State Street Bank and Trust, Comp.*, 137 F.3d 12, 17 (1st Cir.1998).

Here, Plaintiff's Complaint refers to the Policy at issue and relies, in part, on several letters exchanged by the parties to assert the date upon which the claim was officially denied. The Court considers these documents to have "merged" into the pleadings for the purposes of evaluating the Defendant's Motion to Dismiss.

## II. BACKGROUND

Plaintiff, Elizabeth McLaughlin ("McLaughlin"), is a former employee of Athena Neurosciences, Inc. ("Athena") who suffers from Chronic Fatigue Syndrome ("CFS")[1] and Fibromyalgia.[2] As an employee of Athena, McLaughlin was a participant in Athena's long-term disability plan ("Plan"). UNUM issued and administered a long-term disability policy to the Plan ("Policy").

In or about May 1994, McLaughlin filed a claim for long term disability benefits with UNUM. By letter dated August 16, 1994, UNUM granted McLaughlin's request for long term disability benefits under the Plan effective July 13, 1994. UNUM decided, however, that McLaughlin's claim fell within the insurance policy's mental illness limitation, which provided that UNUM would pay no more than twenty-four months of benefits for any disability due to "mental illness."[3]

McLaughlin repeatedly challenged UNUM's classification of her disability as a mental illness by submitting records of her physical problems. UNUM, however, maintained its classification of McLaughlin's disability and, thereby, discontinued McLaughlin's long term disability benefits under the Plan effective July 13, 1996.

In response, McLaughlin, requested a review of this denial by letter dated August 5, 1996. In her letter, McLaughlin again explained that CFS and Fibromyalgia are physical disorders, but that her disabled condition caused her to suffer some secondary depression. By letter dated August 7, 1996, however, UNUM officially denied McLaughlin's claim.

---

1. McLaughlin's CFS symptoms include severe fatigue, headaches, impaired memory, muscle pain (myalgia), recurrent fever, sore throat and tender soft tissue spots.

2. Fibromyalgia is characterized by chronic, unexplained pain in specified muscular tissue points.

3. The Policy defined "mental illness" as "mental, nervous or emotional diseases or disorders of any type." (*See* Compl. at ¶ 10 (Docket # 1).) (internal quotations omitted).

McLaughlin maintains she remains physically disabled under the terms of the Plan. To date, UNUM has not paid McLaughlin's disability benefits for any period after July 1996. McLaughlin, therefore, brings this single count complaint against UNUM and the Plan alleging that UNUM violated her rights under 29 U.S.C. § 1132(a)(1)(B). In response, UNUM moves to dismiss asserting that McLaughlin's ERISA claim for long-term disability benefits is time-barred.

## III. DISCUSSION

### A. The Employee Retirement Security Act of 1974

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1999), was enacted because Congress intended employee benefit plans to be an exclusively federal concern. *Lugo v. AIG Life Ins. Co.,* 852 F.Supp. 187, 190 (S.D.N.Y.1994). ERISA comprehensively regulates, among other things, employee welfare benefit plans that "provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." § 1002(1); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The goal of ERISA is "to provide uniform, national regulation of benefit plans." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 147 (2d Cir.1989).

ERISA has six civil enforcement provisions. *Mass. Mut. Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Plaintiff's cause of action arises under 29 U.S.C. § 1132(a)(1)(B).[4] ERISA does not contain a statute of limitations for suits brought under this provision. *Nazario Martinez v. Johnson & Johnson Baby Prod.,* 184 F.Supp.2d 157, 159 (D.P.R.2002) (citing *Harrison v. Digital Health Plan,* 183 F.3d 1235, 1238 (11th Cir.1999)). In such a situation, a federal court generally applies the "most analogous" statute of limitations from the jurisdiction where it sits, as long as the limitations period is not inconsistent with federal law or policy. *Id.* (citing *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)); *see also Wang Labs., Inc. v. Kagan,* 990 F.2d 1126, 1128 (9th Cir.1993) (stating that in an ERISA action, federal courts ordinarily borrow the forum state's statute of limitations so long as application of the state statute's time period does not impede the effectuation of federal policy).

### B. Statute of Limitations

The parties agree that Maine's six-year statute of limitations for all civil actions applies to this case.[5] Maine's six-year statute of limitations provides, in relevant part, that "[a]ll civil actions shall be commenced within six years after the cause of action accrues and not afterwards." 14 M.R.S.A. § 752 (1996).

Despite looking to state law to determine the applicable time period, federal courts look to federal law to deter-

---

4. Section 1132(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary ... to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1999).

5. By virtue of her bringing suit in Maine, Plaintiff implicitly acknowledges her claim is untimely under California's four-year statute of limitations. Regardless, the Court finds Maine's six-year statute of limitations applies because Maine is the forum state. *Wang Labs., Inc. v. Kagan,* 990 F.2d 1126, 1128 (9th Cir.1993); *Nazario Martinez v. Johnson & Johnson Baby Products,* 184 F.Supp.2d 157, 159 (D.P.R.2002) (internal citations omitted).

mine the time at which a plaintiff's federal claim accrues. *Bolduc v. Nat'l Semiconductor Corp.,* 35 F.Supp.2d 106, 118–119 (D.Me.1998) (citing *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 127 (1st Cir.1987)). In an ERISA case, federal courts apply the "discovery rule" to determine when a plaintiff's ERISA claim accrues. *Union Pac. R.R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.1998). Consistent with the "discovery rule," the general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and formally decided. *Id.* An exception exists, however, when there has been a clear and unequivocal repudiation of the employee's claim for benefits, which has been made known to the beneficiary. *Id.* at 330–331. In such cases, a claim under ERISA accrues before a formal denial has been issued and even before a claim for benefits is filed. *Id.*

In light of *Bolduc* and *Beckham,* Defendant argues Plaintiff's cause of action accrued in August 1994, when Defendant approved Plaintiff's claim for benefits and also informed her that her claim was classified as a mental illness subject to a maximum of twenty-four months of benefits. It was at this point, Defendant argues, that Plaintiff first "discovered" that her disability benefits were going to be denied after twenty four months.

In response, Plaintiff argues the statute of limitations did not begin to run until UNUM officially denied Plaintiff's claim in August 1996. Plaintiff argues Defendant's August 1994, letter cannot be construed as a claim denial letter because it does not contain the information required under the Department of Labor regulations issued pursuant to ERISA Section 1133.[6]

█ Furthermore, Plaintiff argues this case is distinguishable from cases like Bolduc and *Beckham.* Plaintiff argues the courts in both Bolduc and *Beckham* used the date of unequivocal repudiation as the accrual date for the statute of limitations because the claimant in each of those cases never filed a claim for employee benefits, and therefore, no formal denial date could be used as the start of the limitations period. Here, because Plaintiff made a formal claim, Plaintiff argues it would be inappropriate to apply the "narrow exception" discussed in Bolduc and *Beckham.*

As Defendant states, however, Plaintiff's argument points to a "distinction without a difference." (*See* Def.'s Reply Mem. in Supp. of Mot. to Dismiss at 13 (Docket # 8).). Regardless of whether the *Bolduc* and *Beckham* plaintiffs actually filed a claim for benefits, the significance of the court's holding in those cases is that a cause of action is deemed to have accrued whenever the claimant first learned of her ineligibility for further benefits. *Beckham,* 138 F.3d at 330; *Bolduc,* 35 F.Supp.2d at 118–119 (stating that a claim under ERISA may accrue before a formal denial, and even before a claim for benefits is filed, when there has been a clear and unequivocal repudiation of the employee's claim for benefits) (citing *Miles v. N.Y State Teamsters Conf. Pension & Ret. Fund Employee Pension Benefit Plan,* 698

---

**6.** The Claims Procedure regulation requires that an insurer:

provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons for the denial; ... (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 U.S.C. § 1133.

F.2d 593, 598 (2d Cir.1983)) (quotations omitted).

Here, Plaintiff was put on notice in August 1994, that her claim was subject to the mental illness limitation. It was at that time that she first discovered, or at the very least, should have discovered, that her benefits would be discontinued in August 1996. Consistent with the "discovery rule," the six-year limitations period under Maine law began to run in August 1994, and expired before Plaintiff filed suit.

### C. Contractual Limitations

The fact that Plaintiff's claims fails under Maine's six-year statute of limitations should end the discussion. In light of the Ninth Circuit's decision in *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 648 (9th Cir.2000), however, Plaintiff treats contractual limitations periods as separate and distinct from statutory limitations periods set by the state legislature. *Wetzel,* 222 F.3d at 648. As a result, Plaintiff, in addition to arguing her claim is timely under the applicable state statute of limitations, argues her claim is timely under the applicable contractual limitations. For purposes of completeness, the Court addresses Plaintiff's arguments.

The Policy at issue states: "A claimant or the claimant's authorized representative cannot start any legal action … more than 3 years after the time proof of claim is required." (*See* Def.'s Mot. to Dismiss at Ex. A (Docket # 4).). Plaintiff argues, however, that this is not the applicable contractual limitation period. Instead, Plaintiff argues the Court must incorporate the California Insurance Code's ("Cal. Ins.Code") mandatory provisions into the Policy because the Policy states it is governed by California law.

Under the Cal. Ins.Code, certain mandatory provisions must be incorporated in disability insurance policies delivered or issued for delivery to any person in California. Cal. Ins.Code §§ 10328 and 10350 (West 2002). The Cal. Ins.Code includes a mandatory contractual limitation provision:

> A disability policy shall contain a provision which shall be in the form set forth herein.

> Legal Actions: No action at law or in equity shall be brought to recover on this policy … after the expiration of three years after the time written proof of loss is required to be furnished ….

Cal. Ins.Code § 10350.11. The mandatory contractual limitation provision incorporates by reference the Cal. Ins.Code's mandatory "proof of loss" provision:

> Written proof of loss must be furnished to the insurer … in the case of claim for loss which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable ….

Cal. Ins.Code § 10350.7.

Plaintiff argues several jurisdictions have construed this compulsory language to mean that the "proof of loss" requirement, and, by extension, the three-year limitation period does not commence until the participant is no longer disabled as an objective, medical fact. Construing the "proof of loss" requirement in this way, Plaintiff alleges the contractual limitation period has not yet begun to run because she remains disabled.

 Plaintiff's argument fails, however, because the Policy's governing jurisdiction provision does not qualify as a choice of law provision. A governing jurisdiction provision that merely refers to a particular state without providing any elaboration as to what should happen in the event of litigation does not serve to delineate the named state as the choice-of-

law forum. *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1190 (10th Cir.1999) (finding that merely referencing Tennessee as the "Governing Jurisdiction" in a UNUM policy was not enough to delineate Tennessee as the choice-of-law forum in the matter). The Policy's governing jurisdiction provision, therefore, does not subject the entire Policy to the regulatory scheme set forth under the Cal. Ins.Code.

■ Even assuming the governing jurisdiction provision is considered a choice-of-law provision, however, Cal. Ins.Code Sections 10350.7 and 1350.11 still are not incorporated into the Policy. Choice of law provisions in contracts do not apply to statutes of limitations, unless the provision expressly references the statute. *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179–80 (3rd Cir.1992) (citing *Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985)).

Cal. Ins.Code Section 10350.11 is a statute of limitations. With the exception of the Ninth Circuit in *Wetzel*, numerous other courts, including the First Circuit, have characterized similar insurance code provisions as statutes of limitations. *See, e.g., LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998) (characterizing 24–A M.R.S.A. § 2715 as a statute of limitations in determining that there was no equitable basis to halt the running of the limitations period); *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 370 (3rd Cir.1996) (describing 40 Pa. Cons.Stat. Ann § 753(A)(11) as a statute of limita-

tions); *Swartz v. Berkshire Life Ins. Co.*, No. 99 Civ. 9462, 2000 WL 1448627, at *7 (S.D.N.Y. Sept. 28, 2000) (comparing N.Y. Ins. Law § 3216(d)(1)(K) to other statutes of limitations); *Simon v. Allstate Employee Group Med. Plan*, No. 99 C 5212, 2000 WL 1011596, at *2 (N.D.Ill. July 18, 2000) (describing 215 Ill. Comp. Stat. § 5/357.12 as a statute of limitations); *I.V. Services of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F.Supp.2d 79, 86 (D.Mass.1998) (describing Mass. Gen. Laws. ch. 175, § 108(3)(a)(11) as a three year statute of limitations).

That so many courts have had no difficulty characterizing the states' insurance code provisions as statutes of limitations, reflects the fact that those statutes, and by analogy the Cal. Ins.Code, meet the classic definition of a statute of limitations. The Court, therefore, finds that *Wetzel* is an aberration to the vast majority opinion and chooses not to follow its reasoning.[7] Because the governing jurisdiction provision cannot act as a choice of law provision for purposes of selecting a statute of limitations absent an expressly stated intention to the contrary, Plaintiff may not invoke Section 10350.11 to evade the bar of the Policy limitation on legal actions.

In light of the above discussion, the only way Plaintiff's claim can be found timely is if it falls within the Policy's time limitation provision. The Court, therefore, looks to whether the Policy's three-year limitation period is enforceable.

Courts have consistently found that such contractual limitation provisions are legally

---

**7.** Even if the Court chose to follow *Wetzel*, however, Plaintiff's action would still be untimely. Under *Wetzel*, an ERISA plaintiff must first pass the statutory hurdle of complying with the applicable statute of limitations, and then must also comply with the contractual requirement created by Section 10350.11 of bringing the action within "three years after the time written proof of loss is required to be furnished." Cal. Ins.Code § 10350.11; *Wetzel*, 222 F.3d at 648, 650 (characterizing

policy provisions that arise out of the application of Section 10350.11 as *contractual* limitations periods, which operate distinct and apart from *statutory* limitations periods).

Here, Plaintiff fails to overcome the initial burden of complying with the applicable statute of limitations (i.e., Maine's six-year period for actions based on written contracts). Therefore, Plaintiff's claim is untimely even under *Wetzel*.

enforceable and binding on claimants. *See, e.g., State Street Bank & Trust v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir.2001) (enforcing a two year contractual limitations period); *LaChapelle*, 142 F.3d at 509–10 (finding plaintiff's action barred by three-year limitations provision in insurance contract); *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir.1991) (finding one-year contractual limitations period valid and enforceable although brief).

Plaintiff argues that even if the time limitation provision in the Policy is valid, Plaintiff's lawsuit is timely because UNUM never triggered the contractual limitation period. Specifically, Plaintiff complains the correspondence sent to her by UNUM on August 7, 1996, did not specifically request that Plaintiff submit "proof," "proof of claim," or "proof of loss." (See Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7 (Docket #5).) Plaintiff argues when an insurer drafts particular policy terms and procedures relating to the insured's right to commence a legal action, the insurer must utilize the same basic terms and procedures in order for the policy provision to be triggered. *Mogck v. Unum Life Ins. Co.*, 292 F.3d 1025, 1029 (9th Cir.2002).[8]

This Court has previously rejected the formulaic approach advocated by Plaintiff. *Cavanaugh v. Sun Life Fin. Servs. of Canada, Inc.*, Civil Action No. 245–B–S (D.Me. May 10, 2001). In *Cavanaugh*, this Court specifically held that, even though the insurer's denial notices did not inform the plaintiff that she should submit further "proof of claim," the insur-

er's instruction that the plaintiff "should include any medical information which you may feel has a bearing on this decision" was sufficient to trigger the contractual limitation period. *Id.* at 9. The Court saw "no ambiguity in using such descriptive language in lieu of the term 'proof of claim' in Defendant's communications with Plaintiff." *Id.*

Here, UNUM's correspondence sent on August 7, 1996, plainly informed Plaintiff of her right to file an appeal. While the letter did not include buzz words such as "proof," "proof of claim," or "proof of loss," it did inform Plaintiff of her right to request an appeal within sixty days, and stated: "If you have new, additional information to support your request for disability benefits, please send it to my attention at the above address." (*See* Def.'s Mot. to Dismiss at Ex. D (Docket #4).) There is no doubt from this language that Plaintiff was adequately informed of her rights. Therefore, at the very latest, the three-year contractual limitations period began to run sixty days after August 1996 (i.e., October 1996) and expired in October 1999, two and one half years before Plaintiff filed this action.

## IV. CONCLUSION

For the above stated reasons, the Court hereby GRANTS Defendant's Motion to Dismiss (Docket #4).

SO ORDERED.

---

**8.** The Court is not bound by the holding of another circuit. *See, e.g., Clifford v. M/V Islander*, 882 F.2d 12, 14 (1st Cir.1989) ("Notwithstanding the division on the issue throughout the circuits, the district court was bound to follow the prior decisions of this court ...."); *Parodi v. Merit Sys. Prot. Bd.*, 702 F.2d 743, 748 n. 6 (9th Cir.1982) (" 'Although we look to the reasoning of other circuits and district courts for guidance, we are bound only by decisions rendered in this circuit.' ") (quoting *Gunther v. Washington County*, 623 F.2d 1303, 1319 (9th Cir.1979)); *Sweet v. Commissioner*, 102 F.2d 103, 105 (1st Cir.1939) (stating the First Circuit is not bound to follow the opinion of another such court).